[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 545 
These consolidated appeals are taken by the Baltimore and Ohio Railroad Company (No. 26557), the Southern Railway Company (No. 26558), and the Chicago, Burlington Quincy Railroad Company (No. 26559), from separate judgments of the county court of Clinton county overruling their several objections to taxes for 1939 of various subdivisions within said county, upon the application of the county collector for judgment. There are eleven different taxes involved, and no one of the appellants is interested in all of them. Instead of considering separately each objection made by the several appellants, for brevity *Page 546 
and convenience we will consider together the objections made by all of the appellants, and will later make reference to the effect of our holding upon each objection upon the respective appellants. The revenue is involved, giving us jurisdiction on direct appeal.
Objection No. 1 of appellants is that the Tax Commission certified the assessed value of the railroad properties in Clinton county on the basis of the equalization ratio of 56% prevailing in that county, despite the fact the State-wide average equalization ratio was 35% of the assessed valuation of the railroad property in Clinton county. This proposition was thoroughly and comprehensively discussed in Mobile and OhioRailroad Co. v. Tax Com. 374 Ill. 75, in which it was decided that the assessment of railroad property throughout the State should be uniform, and should not vary according to the equalization factor prevailing in the respective counties.
It is agreed that for the year 1939 the Tax Commission determined that the State-wide average equalization ratio was 35% of the assessed value. Appellee concedes this objection must be sustained unless we modify or change our ruling in the above case. At the time the opinion was written the former decisions of this court were reviewed, including the matters suggested in the argument of appellee, and it was held it was the legislative intent that the equalization factor for railroad purposes should be State-wide, and should not be variable in each county. The matter is one exclusively for the legislature, and the relief, if any, by the several counties must come from the legislature and not from the courts. This objection, upon authority of Mobile andOhio Railroad Co. v. Tax Com. supra, must be sustained, so as to conform to the equalization rate of 35% of the assessed value.
Objection No. 2 covers several items, one of which is to a portion of the county tax levy consisting of 13 cents per hundred dollars valuation for county highway purposes, *Page 547 
and 25 cents per hundred dollars valuation for general corporate purposes. It is conceded that the levy for county highway purposes is one-half cent in excess of the maximum rate of 12 1/2 cents on the hundred dollars valuation permitted by statute, and therefore the objection to this extent should be sustained.
Under the general corporate purpose of the county tax levy two items are objected to on the ground that they do not come within a county purpose. These items are as follows:
 Care inmates in care of County Farm, not chargeable to any township .......................... $1600.00
 Transient paupers, not chargeable to townships ................................ 1000.00
In People ex rel. Dooley v. New York, Chicago and St. LouisRailroad Co. 371 Ill. 522, we held the validity of a county tax is governed by the law and rate authorized at the time the levy is made by the county board. At the time this levy was made there was no law in force which charged the county with the general support of paupers, and consequently no levy for such a tax could be made. People ex rel. Thies v. Baltimore and Ohio SouthwesternRailroad Co. 356 Ill. 272.
It is urged by appellee that the case is controlled by Cloyd v.County of Vermilion, 360 Ill. 610, where we held that under the law then in force (Ill. Rev. Stat. 1933, chap. 107, par. 25) the county was liable for the expense of paupers, under section 24 of the Pauper act, as it then existed. In 1939 section 24 had been amended, so that as it now reads the governmental units included within it are cities and villages of 500,000 inhabitants, and counties and towns, and the municipalities excluded from it are cities and villages having a population of less than 500,000 inhabitants. The act as it existed at the time of the Cloyd case
placed a duty upon a county or town, under the conditions therein named, to care for a person not falling within *Page 548 
the definition of a pauper, but who shall fall sick or die, having no money or property to pay his board, nursing, medical aid or burial expenses. The only difference between the act as it existed at the time of the Cloyd case and at this time is that cities and villages having a population of 500,000 or more have the same obligation that a county or town had at that time, and the obligation of the county or town has not changed.
We held in the Cloyd case that the obligation cast upon a county by section 24 of the Pauper act was a county purpose, and that it could be made liable for such expenses. The statute as it existed in 1939 was not changed with respect to counties, so the only question is whether the matters set out in the levy are within the provisions of section 24. The purpose of the levy was for care of inmates in the county farm not chargeable to any township. This properly covers persons who fall sick or die, or have no property to pay the board, nursing and medical aid or expenses not chargeable to a township, and who are in the county farm to be so taken care of. The appropriation necessarily cannot specify who will fall within this class, but there is a class mentioned in the statute, for which the county is liable, and which is not chargeable to a township.
The other appropriation is for transient paupers not chargeable to townships. Section 24 designates two types of persons, — a "non-resident," or "any person not coming within the definition of a pauper." The levy in this case properly attempted to divide the purposes. A transient pauper is obviously a non-resident, and aid given a transient person in the county, not chargeable to a township, can properly come within such class of "non-resident" above designated. The cases of People v. Baltimore and OhioSouthwestern Railroad Co. supra, and Cloyd v. County ofVermilion, supra, are not inconsistent, as in the first case the levy attempted to make the county liable for "the support of the county poor," which would include all poor *Page 549 
residents of the county, when the burden had been cast upon the townships by statute. The Cloyd case points out there is a liability upon the part of the county for certain designated classes of people not coming within the technical term "paupers," being a different class from the county poor, but who may be given relief, and the expense therefor recovered from the relatives, or from the county of which he is a resident.
At the time of this levy there was no change made in the statute taking the burden in such cases from the county, but only a new class created, which became liable for such expenses so added. We think the levy sufficiently describes a proper purpose and subject. The objection was properly overruled.
Within the corporate purpose levy there is also an item for supplies $1500. This is objected to because it is claimed it is ambiguous, and that it might possibly be used for paying expenses of a fee office of the county. While tax laws are strictly construed in favor of the taxpayer we do not think it is necessary for us to suppose or infer that the county board will violate the law in improperly spending money from the levy when we can take judicial knowledge that supplies used in all county offices almost defy specification. In People ex rel. Holmquist v.Illinois Central Railroad Co. 237 Ill. 324 we held that a county levy for incidentals was sufficiently specific. This objection was properly overruled by the trial court.
Objection No. 3 applies to the levies for general road and bridge taxes for the townships of Wade, Meridian, Clement, Carlyle, and Sugar Creek. Typical of this objection is the item of $200 out of the $3500-levy for "administration." There is no objection to the specifications of purpose in the other items of the levy, but it is contended that when the statute provides that the levy shall state separately the several amounts for the proper construction, maintenance and repairs of roads and bridges that such *Page 550 
must be considered as applying to all of the items of expenditure that can be included within the term "road and bridge purposes." The term "administration" has a well-known meaning. We are bound to know there are certain expenses in operating the office of highway commissioner, viz., — procuring of forms, stationery, clerical help, and the like, which may be incurred in carrying out the expenditure of money levied for road and bridge purposes. The item in question would certainly be a proper expenditure in carrying out the purpose of the office. We cannot see what objection can be made to a levy that specifies the purposes of the levy more minutely than is required by statute and is not, as contended by appellants, for something which does not relate to highway purposes or to a duty which the highway commissioner should fulfill. The court properly overruled this objection to such tax in each of the said townships.
In the tax levied for Carlyle township there was an item of $100 for buildings. We think this item is too indefinite, as it is not apparent that this comes within any of the designated road and bridge purposes. There is a possibility that a building would be needed for the shelter of equipment, or some similar purpose, but it might likewise be the purpose to acquire a building for other reasons not properly within a highway purpose. We think this item of expenditure has not been properly described or identified as a road and bridge purpose, and the objection to it should have been sustained.
Within the same objection is the sum of $1300 in the highway, road and bridge levy of Sugar Creek township, designated as being deductions for the cities of Trenton and Aviston within said township. We do not think this item has any place in a levy. The statute (chap. 121, pars. 62 and 65) provides that where a township is partly situated within the confines of the corporate limits of a city, one half of the levy shall be paid to the treasurer of the city. The division of the taxes has nothing to do with *Page 551 
road and bridge purposes. The regular levy is made by the highway commissioner for the entire township, but as to that part of the valuation lying within the city, the part of the money realized from the taxes is divided between the city and the township. The effect of the levy being made in this manner was to create a separate item for road and bridge purposes not included in the statute, when the provision of the law is that after the levy is made by the highway commissioner for the purposes provided in section 56 of the Roads and Bridges act, one half of such taxes shall be paid to the treasurer of the city or village for the improvement of roads, streets and bridges, either within said city or within such township. This does not create a separate purpose for the levying of taxes, but only provides for a division of taxes levied for road and bridge purposes by the commissioner. Objection to this item should have been sustained.
Objection No. 4 involves the road and bridge levy in East Fork township. The rate was extended at 33 cents per hundred dollars The consent to increase the rate above the maximum of 25 cents to 33 cents per hundred dollars was evidenced by a certificate signed by the supervisor and town clerk. It is stipulated there was no qualified justice of the peace in the township at the time the certificate was filed. Under this stipulation the officers mentioned constituted the sole regular members of the board of town auditors. Section 2 of article 13 of the Township Organization act (chap. 139, par. 118,) makes provision for the collector or assessor of the town to become a member of the board of town auditors in case of the absence of any of the officers of the town, or their failure to attend any meeting of the board. If there was no justice of the peace acting in the town, under the statute the total membership of the town board would be three persons, the number necessary to constitute such board. (Chap. 139, par. 117.) The certificate to increase the tax from 25 cents to 33 cents *Page 552 
is authorized by a majority of the members of the board of town auditors under sections 50 and 56 of the Road and Bridge act. Appellants contend the terms "absence" and "failure to attend" are not sufficiently broad to cover the situation of there being no person acting as a justice of the peace, and so, therefore, there was not a proper board of town auditors to authorize the increase of the road and bridge levy. It seems to us that the statute contemplates absence without regard as to whether it is a voluntary absence or because there was no one holding an office to be present. In either event the person making up the board was not available, and certainly the total vacancy of an office creates the same situation as does the voluntary non-attendance of a person holding an office. The purpose of authorizing the assessor or collector to become a member of the board is to render the town authorities capable of acting when there is an absence of regular members for any reason whatsoever, and to sustain this objection would be to read something into the statute that would violate its manifest purpose. The objection was properly overruled.
Objection No. 5 sets out that in the town of Carlyle 30 cents on the hundred dollars was extended for pauper relief purposes; for general town purposes $2200 was levied, and 27 cents per hundred dollars was extended upon a valuation of $1,294,754 which would, if collected, raise the sum of $3483 whereas a rate of 17 cents upon the valuation would have realized the full amount of the levy. The argument is made that extending the rate at 27 cents instead of 17 cents was but a device to get additional money to be used for the purpose of pauper relief. Inasmuch as a full levy of 30 cents on the hundred dollars for pauper relief has been extended in this town, and no reason advanced by the appellee in his brief why the rate for general town purposes should be extended at a rate of ten cents on the hundred dollars higher than necessary we must *Page 553 
therefore conclude that it is not urging that this item be sustained. We find no authorization in the statute to extend a rate upon the valuation of the property in the town grossly in excess of that necessary to raise a specific sum required. This objection should have been sustained to the extent of 10 cents on the hundred dollars for general town purposes.
Objection No. 6 sets out that in the town of Meridian a total levy of $1000 for town purposes was made, which included an item of $253.25 for contingent purposes. There is nothing in the record which indicates what the contingent purposes, consisting of 25% of the total levy, embraced. In People ex rel. Frick v.Chicago and Eastern Illinois Railroad Co. 361 Ill. 470, we said: "To justify a levy for contingent or miscellaneous purposes the sum levied must be a very small proportion of the total amount levied." In that case an item of general expense of $350 out of a total levy of $1800 was held void. This objection should have been sustained.
Objection No. 7 covers an item of $1400 for "water fund" in the levy for the village of Beckemeyer. No question is raised by appellants that it was not within the power of the village to make such a levy, if it was properly itemized. June 4, 1941, a curative act was enacted (Laws of 1941, vol. 1, p. 322) validating all tax levies of cities and villages for the tax years 1938, 1939, and 1940, where the appropriation or levy was not sufficiently itemized, which but for such curative act would be subject to legal objection on such ground. Since this curative statute did not attempt to make valid a tax which was void, but only purported to cure the defective exercise of a tax power(People ex rel. Ward v. Chicago and Eastern Illinois Railroad Co.365 Ill. 202) it is sufficient to cure the defect urged by appellants. This objection was properly overruled.
Objection No. 8 sets out that in School District No. 28, in said county, taxes were extended at a rate of 76 cents *Page 554 
on the hundred dollars for bonded indebtedness, in addition to other taxes extended at 38 cents on the hundred dollars for building purposes, and there was also a levy of 62 cents for educational purposes. It is stipulated there had been no vote authorizing the levy of a tax in excess of the statutory maximum in the district. The objection to the 38-cent levy is based upon section 189 of the School law, (Laws of 1935, p. 1357,) under which the county clerk is required to extend a separate tax sufficient to pay all principal and interest, and deduct the rate at which the tax must be extended from the authorized rate for building purposes. Here the rate extended for bonded indebtedness is far in excess of the legal rate for building purposes, and, under authority of People ex rel. Hartman v. Terminal RailroadAss'n, 375 Ill. 186, is invalid. Appellee concedes this authority renders the levy of 38 cents on the hundred dollars for building purposes invalid. The objection to this extent should have been sustained.
As to objection No. 9, in School District No. 115, in said county, there was extended a rate of $1.25 per hundred dollars for educational purposes and 47 cents per hundred dollars for building purposes. It appears from a certificate on file in the office of the county clerk that in July, 1922, there was a special election held for the purpose of voting for or against the proposition of raising the rate of taxation one fourth of one per cent for educational purposes, and one fourth of one per cent for building purposes, and that the said proposition was carried at said election. The statute in force in 1922, viz. — section 189 of the School law, (Laws of 1919, p. 856,) provided that the school authorities could levy one cent on the hundred dollars valuation for educational purposes, and a like amount for building purposes; and that the board of education could in its discretion levy not to exceed one and one-third per cent for educational purposes, and for building purposes an amount so that the total for both purposes *Page 555 
should not exceed two per cent. There was then a further provision, if permitted by an election called for that purpose, the board of education could "cause to be levied annually for educational purposes a tax in excess of one and one-third per cent but not exceeding the percentage mentioned in said proposition, and for building purposes such a percentage not exceeding one per cent that the aggregate levy for both educational and building purposes shall not exceed two and two-thirds per cent." If the proposition carried the rate would remain in effect until revoked in like manner by an election.
The contention made by appellant is that by authorizing an increase in rate of one fourth of one per cent for both the educational and the building purposes there was necessarily levied $1.25 for educational purposes and $1.25 for building purposes, because the first option gave the board of education the right to levy $1 for each purpose. In order to reach this result it will be necessary to assume that at the time the election was called there was $1 levied for both educational and building purposes. This does not appear from the record. On the contrary if any assumption was to be made from what is shown by the record it would more probably support the conclusion there was a one-dollar educational rate in effect, and a 37 1/2-cent building rate in effect. Facts are not disclosed establishing the board attempted by the election involved to increase the rate for building purposes from $1 to $1.25. In the absence of any such proof we cannot assume the school authorities violated the law.People v. Illinois Central Railroad Co. supra.
It is said, however, the election was invalid because the propositions were so interwoven a voter who favored the proposition of increasing the educational tax, in order to vote for it, would necessarily have to vote for the proposition of increasing the building tax. The contention of appellants is based upon the assumption that the form of the *Page 556 
ballot was in exactly the same language as the certificate of election which was filed in the office of the county clerk. The agreed statement of fact recites there was on file in the office of the county clerk a certificate which recited the election was held for or against the raising of the rate as pointed out above. The certificate does not state what the form of the ballot was in that election; it merely states the result of the election. Twenty years have gone by, apparently without the question being raised, until some one referred to the old file and found the certificate of election, which may have had a ballot in proper form, or may have had a ballot embodying both items contained in the certificate. This is not sufficient at this late date to show what the form of the ballot was, and by so holding we do not pass upon or intimate as to what our holding would be, should it develop the ballot submitted contained both propositions shown in the certificate. It is sufficient for the purposes of this case to hold there is nothing in the record which shows there was not a ballot in proper form submitted to the voters, which makes it unnecessary for us to pass upon the proper form of the ballot under the School law of 1922, or as to the effect of the curative act of 1931, (Laws of 1931, p. 852,) or the effect of the saving clause in the Repealing act of July 13, 1939. (Laws of 1939, p. 1196.) This objection should have been overruled.
As to objection No. 10, in School District No. 32 of said county taxes were extended at a total rate of $1.99 on each hundred-dollar valuation, of which $1.25 was extended for educational purposes, 50 cents for building purposes, and 24 cents for bonded indebtedness and interest. It is agreed that the maximum rate authorized by vote of the people in said district is $1.25 for educational purposes and 50 cents for building purposes, and that the rate of 24 cents for bonded indebtedness and interest was voted in accordance with the act of July 1, 1935. (Ill. Rev. Stat. *Page 557 
1939, chap. 122, pars. 327.40 to 327.45.) The objection of appellants is to a rate of 24 cents on the hundred dollars of the tax extended for building purposes. The contention is made that under paragraph B of section 189 of the School law (Ill. Rev. Stat. 1939, chap. 122, par. 212) the tax for building purposes cannot exceed the maximum of such school district for building purposes, unless the rate for bonds and interest exceeds the maximum for building purposes, when in such case no tax can be extended for building purposes. The contention of appellants has been sustained in People ex rel. Miller v. Mobile and OhioRailroad Co. 374 Ill. 376, and People v. Terminal Railroad Ass'n,supra. Appellee concedes these decisions control this situation. This objection should have been sustained by the trial court.
As to objection 11, the road and bridge tax extended for the town of Lake in said county included 10 cents on the hundred-dollar valuation, claimed to be authorized by an election provided by sections 108 to 111 of the Roads and Bridges act (chap. 121, pars. 116 to 119) which in substance provide that upon a petition of 25 per cent of the land owners, who are legal voters of any township, a special tax may be authorized not exceeding 33 1/3 cents on the $100 for a period of not exceeding five years. The form of the ballot submitted was "shall there be an extra levy of ten per cent on each hundred dollars all taxable property made for the term of five years for Rock Road?" The form of ballot for such elections as set out in the statute is: "Shall a special tax for road purposes be levied?" The ballot submitted complied with the statute neither as to its form, nor as to the amount which might be levied. By the terms of the ballot submitted it is possible to levy up to $10 on each $100 of the taxable property in the district. There is no authority in the statute for levying such a tax, and if so, it would violate the provisions of the constitution relative to the amount of *Page 558 
indebtedness which could be incurred by a municipal corporation. In People ex rel. Birch v. Pennsylvania Railroad Co. 375 Ill. 85, we held an election for a tax greater in amount than authorized by statute is null and void. Appellee cites no authority to sustain this tax, and concedes the objection should probably be sustained. We are of the opinion the election purporting to authorize this tax is void, and that the objection should have been sustained by the trial court.
Objection No. 1, applying to all three appellants, is sustained. Objection No. 2 to the extent that the county levy is one-half cent in excess of that permitted by statute is sustained as to all appellants. Objection No. 3 as to the item of $100 for buildings levied in the road and bridge tax for Carlyle township, and the item of $1300 in the highway, road and bridge levy of Sugar Creek Township is sustained as to appellants, Chicago, Burlington Quincy Railroad Co. and Baltimore and Ohio Railroad Co. Objection No. 5, to the extent of 10 cents on the hundred dollars for general town purposes in the town of Carlyle, is sustained as to appellants Chicago, Burlington Quincy Railroad Co. and Baltimore and Ohio Railroad Co. Objection No. 6, to the extent of the levy of $253.25 for contingent purposes for the town of Meridian, is sustained as to appellants Chicago, Burlington Quincy Railroad Co. and Baltimore and Ohio Railroad Co. Objection No. 8, in extending 38 cents on the hundred dollars for building purposes in School District No. 28 as to appellants Chicago, Burlington Quincy Railroad Co. and Baltimore and Ohio Railroad Co., is sustained. Objection No. 10, to the extent of levying a tax for 24 cents on the hundred dollars for building purposes, is sustained as to appellant Baltimore and Ohio Railroad Co. Objection No. 11, as to the extension of road and bridge tax for the town of Lake, is sustained as to appellant Southern Railway Company. All other objections are overruled. *Page 559 
The judgment of the county court of Clinton county is reversed and said cause remanded, with directions to sustain the objections herein enumerated on the part of the appellants specified, and affirmed as to all other objections made by all appellants.
Affirmed in part and reversed in part, and remanded, withdirections.
Mr. JUSTICE SMITH took no part in the consideration or decision of this case.